# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

KIMBERLY SNYDER,                         :

                  Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                  Defendant.        :

Case No. 3:08-cv-014

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant Commissioner's Motion to Remand for Further Proceedings. (Doc. 9). The parties have fully briefed the issues, (*Id.,* Doc. 10), and the matter is ripe for Report and Recommendations.

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying her application for Social Security benefits. (Doc. 2). The Commissioner has moved the Court pursuant to sentence four of 42 U.S.C. § 405(g) to enter judgment in favor of Plaintiff and against the Commissioner and to remand the matter for further administrative proceedings. Essentially, the Commissioner concedes that his decision is not supported by substantial evidence and therefore judgment should be entered in favor of Plaintiff. However, the Commissioner also argues that not all of the factual issues have been resolved that therefore, remand is appropriate. On the other hand,

while Plaintiff agrees that the Commissioner's decision is not supported by substantial evidence, she also argues that all of the factual issues have been resolved, that the record adequately establishes her entitlement to benefits and therefore, rather than remand, the Court should order that benefits be paid.

A brief review of the procedural history of this matter is as follows. Plaintiff filed applications for Social Security disability benefits (SSD) and Supplemental Security Income benefits (SSI) on October 21, 2002, alleging disability from December 31, 2001, due to a back impairment, anxiety, depression, "P.M.D.D.", and a thyroid impairment. (Tr. 79-81; 702-04; 108-17). Plaintiff's applications were denied initially and on reconsideration. (Tr. 51-54, 56-58). A hearing and a supplemental hearing were held before Administrative Law Judge Thomas McNichols, (Tr. 710-41; 742-74), who determined that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 16-39). The Appeals Council denied Plaintiff's request for review, (Tr. 8-11), and Judge McNichols' decision became the Commissioner's final decision.

In determining that Plaintiff was not disabled, Judge McNichols found that Plaintiff has severe chronic low back pain attributable to degenerative disc disease of the lumbar spine with residuals of two surgeries, chronic bilateral knee pain attributable to degenerative joint disease, intermittent polyarthralgias of uncertain etiology, and depression, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 23, finding 3; Tr. 31, finding 4). Judge McNichols also found that Plaintiff has the residual functional capacity to perform work activities at the sedentary exertional level subject to the following limitations: permitted to alternate between sitting and standing as needed; no climbing of ropes, ladders, or scaffolds; no bending, squatting, stooping, kneeling, crouching, crawling, or repetitive twisting at

the waist; no exposure to hazards such as dangerous machines and unprotected heights; no exposure to extremes of temperature or humidity; no exposure to vibrations; no exposure to the general public; and limited to simple one-or two-step tasks requiring little, if any, concentration. (Tr. 32, finding 5). Judge McNichols then used sections 201.25 and 201.26 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 37-38). Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 38).

The Commissioner acknowledges that the VE's testimony, upon which he (the Commissioner) relied appears to be inconsistent with Social Security Ruling 96-9p (SSR). SSR 96-9p reads in relevant parts:

> **PURPOSE:** To explain the Social Security Administration's policies regarding the impact of a residual functional capacity (RFC) assessment for less than a full range of sedentary work on an individual's ability to do other work. In particular, to emphasize that:
> 1. An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare.
> 2. However, a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of "disabled." If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience.
> ...
>
> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less

3

than occasional stooping.

SSR 96-9p, 1996 WL 374185, *1, *8 (emphasis in original).

Plaintiff's position is that because SSR 96-9p provides that a complete inability to stoop would significantly erode the sedentary job base, a finding that she is disabled is required. Indeed, in contrast to SSR-9p's recognition that an inability to stoop does significantly erode the sedentary job base, the VE testified that an inability to, *inter alia,* stoop does not "come into play at ... the sedentary [level] much." (Tr. 770-71). Clearly, as the Commissioner admits, the VE's testimony in inconsistent with the Commissioner's own ruling.

However, Plaintiff has overlooked the language in SSR 96-9p that provides that a complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would *usually* apply. This language makes it clear that SSR 96-9p does not demand an automatic finding of disabled when a claimant, who is limited to sedentary work, has a complete inability to stoop.

The Supreme Court has long acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts. *McCarthy v. Madigan,* 503 U.S. 140, 144-45 (1992)(citation omitted).[1] Exhaustion is required because it serves the twin purpose of protecting administrative agency authority and promoting judicial efficiency. *McCarthy*, 503 U.S. at 145.  The exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to

---

[1] In *McCarthy*, the Court determined that Congress had not expressed in 42 U.S.C. § 1997e an intent to require federal prisoners to exhaust administrative remedies before seeking *Bivens* relief in federal courts.  However, Congress amended 42 U.S.C. § 1997e in 1996, and it is arguable that *McCarthy* is now superceded by statute.  However, the principles for which this Court relies on *McCarthy* have not changed.

administer.  *Id.*  The exhaustion doctrine also acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court.  *Id*.

Exhaustion promotes judicial efficiency in at least two ways.  *Id.*  When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided.  *Id.*(citation omitted).  And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.  *Id.*(citation omitted).  In other words, administrative exhaustion is required to allow development of a factual record, to conserve court time because the remedy may be granted at the administrative level, and to allow the administrative agency the first opportunity to correct errors.

With these principles in mind, this Court concludes that this matter should be remanded to the Commissioner.  First, the Commissioner admits that his decision is not supported by substantial evidence.  The Commissioner should be given the opportunity to correct his own error.  Second, in contrast to Plaintiff's position, SSR-9p does not *require* a finding that she is disabled.  Finally, and most importantly, not all of the factual issues have been resolved.  Specifically, the record is not entirely clear as to whether there is a significant number of jobs available to an individual with the residual functional capacity for sedentary work as well as with the additional limitations which Judge McNichols identified.  Therefore, the Commissioner's Motion to Remand for Further Proceedings should be granted.

It is therefore recommended that judgment be entered in favor of Plaintiff and against the Commissioner reversing the Commissioner's decision that Plaintiff is not disabled.  It is also

5

recommended that this matter be remanded for any further administrative proceedings consistent with this Report and necessary for a determination of whether Plaintiff is disabled.

September 5, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (c), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).